ISAAC LAWSON ET AL. *v.* LAURA V. BONNER.

[40 South. Rep., 488.]

1. PARTITION. *Reversions and remainders. Code* 1892, § 3067. *Parties. Costs.*

  Under Code 1892, § 3067, so providing, rights in reversion and remainder are not affected by partition proceedings, and reversioners and remaindermen are improper parties thereto, and, where improperly joined, costs should not be adjudged against them.

2. SAME. *Specific allotment by decree. Commissioners.*

  In partition proceedings, under ordinary conditions, the decree of the court should not allot a designated part of the premises to one of the parties, but the division should be left to commissioners.

3. SAME. *Supreme court practice. Decree an entirety.*

  A decree for partition is in its nature an entirety and cannot be reversed in part.

FROM the chancery court of Rankin county.

HON. HENRY C. CONN, Chancellor.

Mrs. Louisa Allen died during the summer of 1899, and on the 11th day of October in that year her will was probated. By item 1 thereof she devised to the appellee, Laura V. Bonner, an undivided one-half interest in certain lands in Rankin county, Miss. By item 2 she gave to her sister, Emily N. Lawson, the other undivided one-half interest in the lands for the period of her natural life, and at her death said undivided one-half interest was to go, share and share alike, to the children of her two brothers, Charles and Richard Lawson. After the probation of the will Mrs. Bonner filed a bill in chancery asking for a partition of the lands. She made parties defendant to her bill Emily N.

Lawson, the life tenant, and the remaindermen, the children of her brothers, Charles and Richard Lawson, mentioned in the will; both Charles and Richard being dead. All the children, except two, were infants, without guardian at the time of the filing of the bill. Personal service was had upon some of the infants, and those who were nonresidents were brought in by publication. At the return term a decree *pro confesso* was taken against the adult defendants, and a final decree was afterwards rendered appointing commissioners to partition the land into two equal parts; the commissioners being instructed to assign to Mrs. Bonner, without ballot, that part of said lands as divided by them on which the dwelling house was situated, the remaining half to be assigned to Emily N. Lawson for her life, with remainder to the children of Charles and Richard Lawson. The commissioners acted and made report and the court confirmed the partition and directed the costs to be apportioned; Mrs. Bonner to pay one-half and defendants the other half of the costs, with further direction that, in event Emily N. Lawson and the remaindermen failed and refused within thirty days to pay their proportionate part of the costs, a master was directed to sell their allotted portion of the land in satisfaction of the costs. One week after the expiration of the thirty days, the parties defendant having failed to pay their proportionate part of the costs charged against their interest in the lands, the master advertised for sale the fee of the land allotted to the life tenant and remaindermen, and at said sale Mrs. Bonner's husband appeared and purchased the land for the sum of $62.50, the amount of the costs, and the court confirmed the report of sale to him. Before an appeal was prosecuted, Emily N. Lawson died, and all of the defendants except three had become of age, and allowed their right of appeal to expire under the two-year statute of limitations. The three defendants who were not barred appealed to the supreme court.

*Watkins & Watkins,* for appellants.*

Mrs. Louisa Allen was a resident during her life time of Rankin county, Mississippi, and owned quite a large tract of land lying upon the east and west side of the Steen's creek and Jackson public road. Mrs. Allen died some time during the year 1899, and on October 11, 1899, her last will and testament was filed and duly admitted to probate. Items 1 and 2 of her will disposed of the property involved in the present controversy. By item 1 of her will she devised and bequeathed to the appellee an undivided half interest to all that part of her said land lying west of the Jackson and Steen's creek public road in Rankin county, Mississippi. In item 2 of her last will and testament she gave to her sister, Emily N. Lawson, a one-half interest in said land, to be enjoyed by the said Emily N. Lawson for a period of her natural life, and at her death said undivided one-half interest to go to the children of her two brothers, Charles and Richard Lawson.

Immediately upon the probation of this will Mrs. Laura V. Bonner, appellee in this court, and who is the person mentioned in item 1 of said last will and testament, exhibited her bill in the chancery court of Rankin county, Mississippi, asking for a partition of the land lying west of the Jackson & Steen's creek road, disposed of by items 1 and 2 of said last will and testament. She made as parties defendant to her bill Emily N. Lawson, life tenant, and the remaindermen, being children of her two brothers, Charles and Richard Lawson, mentioned in the last will and testament. She correctly sets out the interest of the parties in the land and she further shows by said bill that all the defendants, with one or two exceptions, are minors without guardians, the said Charles Lawson and Richard Lawson both being dead. Personal service is had upon some of the minors, and those who are nonresidents are brought in by publication.

At the return term a *pro confesso* was taken against the adult

---

*This brief is published in full by order of the court.

defendants and a final decree was rendered appointing commissioners to partition the land in two equal parts.    The commissioners were instructed to assign, proceeding without ballot, to the appellee a one-half interest in said land in fee simple, and in assigning to her said one-half interest were instructed to give her that part of the land on which the residence was situated. They were instructed to assign to Emily N. Lawson for her life the other one-half, the remainder to be assigned to the children of Charles and Richard Lawson.

The commissioners who were appointed duly qualified, and divided the land as they say in two equal parts, assigning to Mrs. Laura V. Bonner, appellee, part No. 1, consisting of one-half of the lands and being the half upon which the residence was situated, in fee simple.    They then assigned to Emily N. Lawson for her life, and to the children of Charles Lawson and Richard Lawson in remainder, what is known as part No. 2.

This report coming on to be heard, the same was duly confirmed by decree.    In the decree confirming the partition the court directs that the costs be apportioned; that Mrs. Laura V. Bonner, appellee, pay one-half of the costs, and that Emily N. Lawson and the other defendants pay the other half; and the court further directed that in the event Emily N. Lawson and the remaindermen fail and refuse to pay their proportionate part of the costs that a commissioner sell what is known as part No. 2, being that interest of Emily N. Lawson and the remainder of the children of Charles and Richard Lawson.

It further appears from the record that thirty days was given the defendants in which to pay the costs, after which the commissioner should proceed with the sale; and it appears by reference to the commissioner's sale and the report thereof that within one week after the expiration of the thirty days one-half of the costs charged against the life estate and remainder not having been paid, the clerk, who was appointed a commissioner, advertised for sale the entire fee in that land allotted to Emily N.

Lawson for her life, with remainder to the children of Charles and Richard Lawson; and it further appears that Mrs. Bonner's husband came to the sale and bought in this entire fee for the costs of $52.50; and, as appears by reference to the final decree, the court confirmed the report of the sale made, and Mr. Bonner, or those in privity with him, are now in possession, claiming the entire fee simple in that part of said land indicated as part No. 2 in the report of the commissioners. .

Three of the defendants, as shown by their petition for appeal, could still appeal from said decree, and have accordingly done so, citing all other parties, both complainant and defendant, to appear before this court. Mrs. Laura V. Bonner, appellee, has been served with personal process. Process shows that Emily N. Lawson is dead, and all the other defendants join in the appeal.

The case is before this court upon the errors assigned as above indicated.

The question which lies at the threshold of this discussion is, what burden, if any, in a partition proceeding can the court impose upon the estate in remainder? Our statute expressly prohibits a partition of the remainder or the reversion. There being in this case a remainder as to the one-half of the undivided interest in the land, what was there left for a court of partition to operate upon? In other words, what interest in the land could be partitioned? The contention is that nothing can be partitioned except that part of the land on which there is a joint possession.

As was said by the court in the case of *Cooper* v. *Fox,* 67 Miss., 242 (s.c., 7 South. Rep., 342), there must be a *res* for the proceedings in partition to attach to, and that *res* is a common estate. In other words, the partition of this land was confined to that interest in which those persons in possession of the same were joint tenants, or had a community of interest; and further than this, the decree of the court could not extend.

Joint possession is the basis of partition proceedings. Courts

can only partition between those who are in joint possession, and nothing but the interest of those who are in joint possession can be affected by the decree.

We cite the court to the case of *Belew* v. *Jones,* 56 Miss., 345. That was a case in which Mr. Belew had the fee simple in a small part of lot 85 in the town of Grenada, which small strip was described by metes and bounds. His interest in said strip, however, was subjected to an outstanding life interest which belonged to Mrs. Jones, who also held the fee simple interest in the balance of lot 85. Mrs. Jones filed a bill for partition, and the court in delivering the opinion says: "In this case there is neither unity of title or possession between Mrs. Jones and Mr. Belew. The latter has freehold estate in part of lot 85, which is separate and distinguished from residue of the lot by metes and measures. His possession is separate and exclusive. Mrs. Jones has a fee simple estate in so much of the lot and exclusive possession as is not embraced in the life estate. She may have a reversion after the termination of the life estate, a reversion to that part of the lot covered by that estate. But the remedy of the statute is expressly denied to those who hold in remainder or reversion. Mrs. Jones is in the enjoyment of the major part of the lot as tenant in fee simple. She also has a reversionary fee in the residue of the lot. She applied for the sale of the entire property. The statute forbids the remedy as to so much of the lot as to which she has merely a reversionary interest. It denies it as to any part of the premises, because she is not a tenant in common or joint tenant of any part of it, either with Belew or with any other person."

It will be seen from a careful study of this case that in order for parties to have a partition of land there must be a joint possession between them; and it is this joint estate which the court will partition, and nothing else.

Take again the case of *Black* v. *Washington,* 65 Miss., 60 (s.c., 3 South. Rep., 140), one which illustrates our theory of this case

to the fullest extent, and a case upon which we are informed the appellee in this case relies.

The facts were that one Mr. Hatch died in 1851, leaving the lands involved in that litigation, one-fourth to his wife in fee simple, and one-fourth for life to each of his three children, Mariah, Caroline and Henrietta, with remainder to their children respectively. Mrs. Hatch after the death of her husband sold her interest to Mr. Black. Henrietta, who was still living, sold her interest for life to Mr. Black. Mariah and Caroline were both dead and their children each owned a one-fourth interest in fee simple at the time the suit was filed.

Now, what did the court do with this state of facts? Here were the children of Mariah owning a one-fourth interest in fee; the children of Caroline owning a one-fourth interest in fee; Mr. Black owning a one-fourth interest in fee and the life interest of Henrietta; and this was a partition proceedings. Let us examine what method was adopted; and we submit that the case at bar should receive exactly the same justice as was meted out in that case.

The court in that case did not partition the fee. The court adjudicated to whom the fee belonged, but when it came to the question of partitioning the land, an examination of the final decree shows that only the joint estate in possession was partitioned. For instance, to the heirs of Mariah was assigned a one-fourth interest in the land; to Caroline, the same; and to Mr. Black was assigned a one-half interest in the land—not one-half with remainder to the children of Henrietta, who was then living; but the court only pretended to operate upon the joint possession and only partitioned that part of the land of which the parties to the suit were joint tenants in common. The children of Henrietta were not even made parties, and at her death a new partition of the entire fee would necessarily result. With this explanation of the facts, let us examine the opinion of the court, delivered by Justice CAMPBELL, on page 63 of the volume:

"The proposition that the land was not partible because as to a one-fourth interest in it, Mr. Black, the appellant, has only a life estate is not maintainable. It is not essential to the right to partition that the cotenants shall have estates that are equal. One may have a term, another an estate for life, and another an estate in fee. *All that is necessary is that they should be cotenants of what is proposed to be partitioned. A remainder or reversion will not be partitioned. But that does not hinder an estate in possession from being partitioned among the cotenants, and the fact that there is a remainder or reversion is not a bar to partition among those having an interest in possession.*

In other words the decision of the court in that case was, that the chancellor only decreed a partition of the life estate, or in other words, a partition of that part of the land in which the parties to the suit were joint tenants. The court in that case never pretended to deal with the remainder which would come to the children of Henrietta at her death (she being then living). It only dealt with and assumed jurisdiction of that part of the land, or that estate in the land, in which the parties were joint tenants—that is to say, the life estate. And the reason for this rule is manifest. It is one founded on justice; what would be an equal and fair division of the fee simple at the death of Henrietta might have been a very different proposition from the partition actually made. In other words, the proposition is stated, as we think, very fairly in Bipshaw's Principles of Equity, sec. 448: "When partition was made by tenants for life or years, it was necessary in order to make the partition absolute to have another writ against the remaindermen when he came into possession."

The reason of this being that the remainderman was not a party and could not have been a party to the original partition proceedings; had no right to be heard, as the partition dealt only with estates in possession, therefore when the life estate termi-

nated the remainderman was entitled to a day in court in order that his estate might be partitioned.

So in the case of *Black* v. *Washington, supra,* at the death of Henrietta it was necessary to have a partition of the entire fee.

Again, take Freeman on Cotenancy, sec. 440, speaking of the proceedings of partition, or the writ of partition as it was then known, he has the following to say, which illustrates the fundamental principles underlying proceeding in partition:

"Through the operation of writ of partition it was intended that the undivided possession should be severed, and that such persons having the right to be in possession of the whole property should exchange that right for the one more exclusive in its nature, whereby during the cotenancy of his estate he should be entitled to the sole use and enjoyment of some specific part of the property. But persons having estates in land under which they had no right to possession were in no respect inconvenienced or damnified by the undivided possession held by the others. Tenants of estates in reversion or in remainder were not permitted to interfere with tenants in possession, because the former had no reason to interest themselves concerning the remainder in which the estate of the latter should be enjoyed. On the other hand, it is equally certain that tenants in possession were at law in full power to compel partition confined to their particular estate and could do nothing towards effecting a severance of estates in remainder or reversion. It was the invariable rule at common law that estates in remainder or reversion could not be divided by proceedings for a compulsory partition, and this is still the rule under some of the American statutes on this subject."

The court will in this connection also see secs. 431, 439, 441, 455 of Freeman on Cotenancy, and the court will find the law as we have stated, that no partition proceedings, either at common law or under statutes, according to the weight of authority could partition anything but the joint possession—in other

words, the particular estate occupied by the joint tenants; that partition proceedings do not necessarily affect the fee, but will rather tend, as Mr. Freeman says, to sever the undivided possession, whether that possession be in an estate for years, or for life, or in fee.

The statement made by Mr. Freeman, sec. 440, is in perfect accord with the case of *Black* v. *Washington*, and, in fact, was cited by the court in delivering that opinion and may be taken as the law in the state of Mississippi.

We cite the following authorities outside of the state of Mississippi, and call the court's attention to them: *Bool* v. *Mix*, 31 Am. Dec., 285; *Baldwin* v. *Aldrich*, 34 Vt., 526; *Selders* v. *Giles*, 85 Va., 93; *Smith* v. *Runnells*, 97 Iowa, 55; *Nichols* v. *Nichols*, 28 Vt., 228.

And also we call the court's attention to the case of *Love* v. *Blow*, 48 L. R. A., 257, in which the court held that the decree of a court dealing with the remainder was absolutely void and could be attacked collaterally.

In the case of *Jameson* v. *Hayward*, 46 Am. St. Rep., 268, it is held that where there is an estate for years in real estate held in cotenancy by certain parties and a reversion held by one of them, the partition must be limited to the estate for years.

And again in the case of *Metcalf* v. *Miller*, 35 Am. St. Rep., 617, it is held that in order to maintain a partition there must be a concurrent possession, as the nature of the action is possessory, its object being to partition the possession between those who are entitled to it.

And again, in the case of *Aydlett* v. *Pendleton*, 32 Am. St. Rep., 776, it is held that partition will not be decreed where there are contingent remainders or other future estates, unless all the parties to be affected thereby united in asking for the relief.

And at the bottom of page 778 will be found a note citing all the cases on this question, in which note the editor says that the

great weight of authority is with this contention, and also cites cases holding the other way.

To the same effect will be found in the Am. & Eng. Ency. Law, vol. 21, p. 1146, and the cases cited under note 1.

We call the court's attention to the case of *Fox* v. *Coon*, 64 Miss., 465 (s.c., 1 South. Rep., 629), in which the court held that there could not be a partition of the land as long as there was an outstanding life estate.

And again, in the case of *Wood* v. *Bryant*, 68 Miss., 202 (s.c., 8 South. Rep., 518), a widow who had a dower interest in the land came in and sought to have the estate partitioned, and the court used the following language:

"It is proper to say further that the partition in this case involved the interest of minor defendants, and the unauthorized attempt to fling the estate in dower into this novel hotchpot and partition it with other lands to which the minors have title, might very injuriously affect their rights and cannot be permitted by the courts, even with the consent of natural guardians."

In the case at bar we have a most extraordinary statement of facts.    The appellee is the recipient of the testator's bounty. Mrs. Allen gave to Mrs. Bonner more of her estate than she gave to any other person.    The evident intention of the will was that provision might be made also for Miss Lawson for life, and the minor children of her two deceased brothers after the death of Miss Lawson.    Still the will is hardly admitted to probate, the ink could hardly have been dry which evidenced her testator's generosity, before she proceeds in this ingenuous manner to absolutely defeat the obvious intention of the will by cutting out by partition proceedings these minor defendants.

We submit to the court that the section of our code which says that remainders and reversions shall not be partitioned means something.    It was intended to protect a class of persons who have been wards of the common law since there has been a common law—that is to say, remaindermen.

It is a matter of judicial knowledge and experience that remaindermen are so situated in reference to real estate that they cannot protect their interest. With but one exception throughout our jurisprudence they can bring no action in reference to the same, but their rights are postponed until the expiration of the life estate. Their interest is necessarily precarious. The highest judicial thought and greatest legal talent throughout the history of the common law has been used in an effort to cut them out of their estates. The skill of the English common law conveyancer reached a science in their efforts to cut out the remaindermen; but, notwithstanding this, the parties holding in remainder and reversion have received the greatest protection and solicitude at the hands of the court. As fast as English conveyancers could find some method of cutting out their interest, English judges and the English parliament have stepped in and intervened in their behalf. In other words, there is no class of litigants, infants excepted, whose interests have received the same amount of solicitude and protection at the hands of the courts. And it was in order that their interests might be protected that our codifiers enacted that the remainder or reversion should not be partitioned. In the first place, they may not be in existence. Again, they may not be in position to protect themselves; and at all events, it was impracticable to make a fair partition between parties in possession and parties not in possession. Therefore our law makers, like all other enlightened legislators, have confined partition proceedings to joint tenants in possession. That being true, and there being absolute prohibition against the partition of the remainder and the reversion, could the remainder in a partition proceedings be taxed with any part of the costs?

We respectfully submit to the court that the action of the commissioners under the decree in this court, in assigning part No. 2 to Emily N. Lawson for life, with remainder to the other defendants in fee simple, was nothing in the world but partition, or

attempt to partition, the remainder. It was doing that which
the statutes positively said they should not do. And we respect-
fully submit that if remainder and reversion can be partitioned,
if the remainder and reversion can be brought before the court in
partition proceedings—in other words, if the decree of the court
in partition proceedings operates only upon the joint estates,
then no jurisdiction of the matter is had and the court is without
power to extend its decree so as to affect the same, either directly
or indirectly. A partition proceedings with us is statutory.
The jurisdiction of the court is limited to the joint estates. It
is positively prohibited from assuming jurisdiction over remain-
ders or reversions. That being true, the court was without
jurisdiction to decree in reference to the remainder in any man-
ner or form. Of what avail would the statute be founded upon
wisdom and justice, which is that the remainder shall not be par-
titioned, if in a partition decree they can be taxed with part of
the costs? This legislative protection to the remaindermen
would be of very slight avail; and besides, the evidence in this
case ilustrates the gross abuse to which the privilege and right
would be extended to. Here is a beneficiary of this will, who
evidently resorts to this method for the express purpose of cut-
ting out these remaindermen in the proceedings which we have
indicated. In other words, she has sought to do and will do,
unless restrained by this court, the very thing which the prohibi-
tion in the code was intended to prevent. So we say, even if we
are wrong in our conclusion, that nothing but the joint estate
could be partitioned, and even if the court was correct in assign-
ing to Mrs. Bonner her one-half interest in fee, still that is the
action of the court in endeavoring to have the remainder
assigned, in the very teeth of the statute; and especially the
action of the court in subjecting it to any part of the expense in
a proceeding in which its partition was prohibited, was clearly
erroneous and constituted reversible error.

These remaindermen were not proper parties nor necessary

parties.   At the termination of the life estate, then there can be a partition of the fee; but all that the court should have partitioned, if anything at all, was the life estate between Mrs. Bonner and Miss Lawson.   In other words, they were the joint tenants of the life estate only, and they were in joint possession only of the life estate.   The court, if it granted any relief at all, should have assigned to Mrs. Bonner a one-half interest for life and to Miss Emily N. Lawson an undivided one-half interest for life, and then at the death of Miss Lawson, which we are advised has since happened, Mrs. Bonner would then become the joint tenant with the remaindermen and the entire fee could be partitioned.

But we submit, even if we are incorrect in the last statement, that the court, being without authority to partition the remainder or reversion, could not impose any burdens upon it.

This court has held in the case of *Cooper* v. *Fox,* 67 Miss., 237 (s.c., 7 South. Rep., 342), that it is not proper to join as defendants in partition suit all persons having interest in the land, but only such persons as have interest in the partition. And the same has been held in the case of *Nugent & McWillie* v. *Power,* 63 Miss., 399.

In the next place let us examine the opinion of the court in dealing with the interest of Mrs. Laura V. Bonner.   The bill in this case, as disclosed by the record, simply states that the complainant and the defendants are the joint owners of the land, and properly states their interest in the same and asks for partition. The court in its decree directed the commissioners in making said partition to assign to Mrs. Bonner that part of the land upon which she resided, and the commissioners in their report show that this was done, and this report was confirmed.

We respectfully submit that the action of the court in directing the commissioners to assign to Mrs. Bonner any particular part of the land was erroneous.   We are aware of the fact that this court has held in the case of *Paddock* v. *Shields,* 57 Miss.,

340, that in case a cotenant has improved part of the common property he should in a partition suit be allotted that part, provided this can be done without injustice to the other joint tenants. And we think that case correctly states the law.

Now, in the case at bar we have no allegation in the bill showing that Mrs. Bonner improved or cultivated any part of the land, or that part upon which the residence was situated. Neither have we any allegation in the bill showing that any specific portion of the land should be allotted to her. The fact of the matter is, there is no prayer in the bill that any portion of the land be allotted to her, and when the defendants are summoned they are not summoned to answer a suit in which there is any allegation made of any claim propounded that Mrs. Bonner is entitled to any particular portion of the land; and we find further that no proof was taken. There were no depositions taken at all. The decree says the court was satisfied from the evidence; but this court decided in the case of *Cox* v. *Kyle,* 75 Miss., 667 (s.c., 23 South. Rep., 518), that even a recital in the decree that oral evidence had been taken would not satisfy the requirements of proof. In other words, in that case it was held that before the chancellor could decree a sale for partition, it should affirmatively appear from the face of the record that a sale was for the best interest of all parties and that an equal division could not be made; and you held that there being no depositions in the record, that the decree of the court was erroneous.

And you afterwards held in the case of *Dickerson* v. *Askew,* 82 Miss., 436 (s.c., 34 South. Rep., 157), that oral testimony taken in open court would not dispense with taking of depositions, and evidence could not be so introduced in a suit filed to enforce a vendor's lien.

So we respectfully submit in this case that if Mrs. Bonner wished any part of the land she should have set up in her bill the reasons why she was entitled to it; should have alleged a case

of equitable relief, and after making the defendants parties, certainly as against the infant defendants, she should have taken depositions, and it should have been shown to the satisfaction of the court why any particular part of the land should be assigned to her.    In other words, the court, looking at the record, before it can affirm a decree assigning any particular part of the joint property to one of the tenants in common, must be able to see from the record that it was fair; or, in other words, it must be justified by the record.    The court will not presume that the chancellor decided the facts, because the chancellor had no evidence before him to render any decision on the subject.    His decree for that reason alone was erroneous and should be reversed.

.A court of chancery is without power by its simple decree to transfer the legal title out of part of the joint tenants and vest same in others in severalty.    In other words, the power of the court to transfer the legal title by adjudication is statutory only, and should be exercised only .when fully justified by the facts in the case.

Again in this case we desire to call the court's attention to the express language of the will and its meanings and intention of the testator, and we have no doubt it will be given the fullest scope and effect by this court.    Item 2 is as follows: "To my sister, Emily N. Lawson, during her natural life, I give, devise and bequeath an undivided one-half interest in all that land lying west of the Steens creek and Jackson public road, and at her death it is my wish that said land shall be divided equally, share and share alike, among the children of my two brothers, Charles Lawson and Richard Lawson."

We say, if the court please, that the express language of this will would prevent Mrs. Bonner from obtaining any such advantage as she has sought in this case over the children of her deceased brothers.    The evident intention was that these children should be provided for, and the record discloses the fact

that at that time they were all of tender years.　And even if we did not have any express statute, and even independently of the statute, we respectfully submit that as between Mrs. Laura V. Bonner and Miss Lawson no proceedings could take place which could affect injuriously or otherwise the interest of these remaindermen; and in that connection read the case of *Bool* v. *Mix,* 31 Am. Dec., 285, where the same question is expressly passed upon.

If it should be said in this case that it was the duty of the minors to appear and object to any of the proceedings at bar, we beg to call the attention of the court to the fact that under our system of jurisprudence the chancellor in a chancery court is the advocate of the minors; and this court has decided that it is his duty to file an exception for them where an exception should be filed; and this is true, although the minors may be represented by next of friend, by attorney, or by both.

In the case of *Salter* v. *Embry,* 18 South. Rep., 373, in which the minors through their attorneys filed suit to obtain equitable relief against usurious mortgage, the court decided that they would have to do equity by offering to pay the debt with legal interest; but the court said that the minors might dismiss that suit and proceed in a court of law where they would not be obliged to do equity, and directed that the case be dismissed. That was a case in which the minors were represented by most excellent counsel.

Again, in the case of *Armistead* v. *Barber,* 82 Miss., 789 (s.c., 35 South. Rep., 199), the court refused to affirm the decree of the chancellor sustaining a demurrer to a demurrable bill, but because there were minors in it reversed the case and directed the counsel for the minors to amend the bill.　This was a case in which minors were represented by counsel who stubbornly refused to amend their bill in the court below when they had an opportunity to do so.　This court declined to allow the interest of the minors to be prejudiced.

Again, in the case of *Neblett* v. *Neblett,* 70 Miss., 572 (s.c., 12 South Rep., 598), incompetent testimony was offered on the trial of the chancery cause, pending against minors brought into court by publication, who were not represented by attorneys. The court held that notwithstanding the failure of the guardian *ad litem* to object, it was the duty of the chancellor to reject such testimony.

Again, in the case of *Price* v. *Crone,* 44 Miss., 575, it was held that nothing is taken for confessed or waived by the minor or her guardian.    The court must look to the record and all its parts to see that a case is made which will grant a decree protecting her interest, and of its own motion give to the minor the benefit of all objections and exceptions as fully as if specially made in the pleadings.

So this court, in passing on the record of the court below, will view the many errors of the chancellor just as if the minor appearing by counsel had noted exceptions at the proper time and in the proper manner to every act and step taken in the proceedings.

As to the effect of reversal in this case, we have the following to say: The attorneys for the appellee say that if the court should reverse this case it should only be reversed for those appellants who have appealed, or in other words, could appeal.    We beg to call the court's attention to the fact that under some circumstances this may be the law; but it will not be of any benefit and cannot be evoked by appellee in this case.    The decree of the court below in directing the partition and directing the same in the manner it did was an entire and indivisible decree, as were the other decrees in the case.    The law is found to be correctly stated in 3 Cyc., 448, as follows:

"Where a decree is entire and indivisible, it cannot be reversed in part and affirmed in part, and if there be reversible error therein it must be set aside in toto."    Citing cases from every state in the Union, including the following case from Mississ-

ippi: *Jones* v. *Matthews,* 4 South. Rep., 547, in which this court, speaking through Judge COOPER, said: "The final decree is of inseparable character, and a reversal as to infants necessitates a reversal as to all parties."

That case was a decree foreclosing a vendor's lien where proper process was not had upon the minors.    Everybody was barred from taking an appeal except the one minor, and the court held that a reversal of the decree as to the minor necessitated a reversal of the entire decree.

So we say if the court reverses this case and remands it—and we are unable to see how the court could do otherwise—then we submit that the order of the court should be that the case be remanded and that the appellee be allowed to file a supplemental bill alleging the death of the life tenant, Emily N. Lawson, if they see fit, and the case be proceeded with as an ordinary suit for partition.

Even if it should appear to the court that the decrees affecting the remainder were void and inoperative to affect the same, just as a deed would be inoperative made by party owning one-half of the interest in the land to convey more than his interest in the land, although the deed might purport to convey the entire fee, still the decrees should be reversed because the authorities hold that a void decree may be reversed on appeal on bill of review or attacked collaterally.

See the case of *Waldron* v. *Harvey,* 102 Am. St. Rep., 959.

We are very much impressed with the idea that the court was without authority to deal with anything except the joint possession, and that its decree purporting to affect the remainder was absolutely void.    However, with the decrees unreversed, we are met in a separate suit by the proposition that we are attacking collaterally the decrees complained of in this cause.

We call the court's attention to the fact that in this case we have appealed from every decree rendered by the court—the decree ordering the partition, the decree confirming the report

of the commissioners, and the decree confirming the report of the commissioners who sold the land for payment of costs; and the action of the court in granting these different decrees is assigned as error and is before you for review.

It is very apparent to us that the intention of the court to charge the remainder with costs was erroneous; and further, the decree is absolutely void or merely voidable and reversible on decrees so immaterial from our standpoint. In conclusion, we state our proposition as follows:

1. In a partition proceeding nothing can be partitioned except the joint estate between tenants in possession of those having right of possession, which is the same.

2. That in this case the parties were only joint tenants in possession or having right of possession of the life estate, which estate would only have been partitioned.

3. If we are incorrect in our conclusion, then we say that the statute forbids the partition of a remainder, and as it could not be partitioned in a proceedings brought purely for partition, it could not be charged with any of the burdens incidental to the same. Even if the court should think that Mrs. Bonner had a right to have her one-half interest in fee set apart to herself and that the remaindermen will take that part of the land set apart to Emily N. Lawson for life, then we state that they would take their remainder only as an incident to her life estate, and none of the burdens of the partition suit could be charged against that estate on the land which this Court was prohibited from partitioning. If the defendants holding the remainder had come into court and endeavored to resist the proceedings, they would have been met with the proposition that the remainder could not be partitioned or affected, and that being true, they being unable to assert any rights in partition proceedings—or in other words, their rights and interest not being dealt with, it would be rankest injustice to charge their estate with any of the burdens of the partition proceedings.

4. If we are incorrect in all of this, then we state that the court erred in assigning to Mrs. Laura V. Bonner any particular part of the land; that the court could not transfer any part of the legal title from the joint owners to one of the tenants in severalty.

*Williamson, Wells & Peyton,* for appellee.

There was no partition as to the remaindermen, the heirs of Charles Lawson and Richard Lawson. The partition was of the land in which one-half interest in fee simple was in Laura V. Bonner, and a half interest, a life estate, in Emily N. Lawson. There can be no question as to the right to partition between these two. In *Black* v. *Washington,* 65 Miss., 60 (3 South. Rep., 140), the court say: "All that is necessary is that they should be cotenants of what is proposed to be partitioned." "The fact that there is a remainder or reversion is not a bar to a partition among those having an interest in possession." This is just the case at bar. The court never pretended to make any partition among the remaindermen. Had the chancellor attempted to make a partition between the remaindermen, it would have been simply void as to them, and would not have affected the partition among these cotenants, because in doing so he would have exceeded his authority.

Since the rendition of the decree for partition nearly six years have elapsed, and all of the appellants are barred of their right to appeal, unless relieved by the disability of minority. There are two of the appellants who have not arrived at the age of majority, and one that has not been of age two years. These may not be barred. All of the others are barred of their right to appeal. Code 1892, § 2752.

The interests of the parties in the land to be partitioned in this suit were not joint, but they were several. So that we contend that, when three of the defendants appeal, the decree must be affirmed as to those who did not appeal. *Dickerson* v. *Chris-*

*man,* 28 Mo., 134; *Vance Shoe Co.* v. *Haught,* 41 W. Va., 275 (23 S. E. Rep., 553); *Cook* v. *Ligon,* 54 Miss., 368; *Holman* v. *Murdock,* 34 Miss., 275 (3 Cyc., sec. 448); *Ingersoll* v. *Ingersoll,* 42 Miss., 155.

Mrs. Bonner certainly had the right to have set apart to her an undivided one-half interest in the land free from any claim, right or title, not only of the life tenant, but of those who held a remainder interest in the other undivided half interest.    Mrs. Bonner had a right to have her undivided fee-simple interest set apart so that she could sell it, or mortgage it, or use it in any way independent of any claim of Emily N. Lawson or of the remaindermen.

WHITFIELD, C. J., delivered the opinion of the court.

Our statutes (Code 1892, § 3097, *et seq.*) make it plainly improper to partition any rights in reversion or remainder, or to make reversioners or remaindermen parties to any partition proceeding.    The writ and all the proceedings are possessory purely.    It was, theerfore, manifest error for the court to attempt to deal in any way with the rights of the children of Charles and Richard Lawson.    The extent of its power was to have partitioned the land on the west side of the road between Emily N. Lawson and Laura V. Bonner, leaving a new partition to be made at the death of the life tenant, Emily N. Lawson. Our decisions on our statutes have made all this exceedingly plain.

It was manifest error for the court to direct, of its own motion, the commissioners to so partition the land as to give to Mrs. Bonner the part on which the residence was situated.    That was for the commissioners.    It was also gross error to tax the interests in remainder with any of the costs of the proceedings, and to decree the partition originally as here ordered, or the sale subsequently made of the remainder interests for $62.30.    The decree in this case is in its very nature an entirety, inseparable

and indivisible. The proceedings throughout are a comedy of errors. We cite no authorities, for the reason that all our own authorities, and the authorities elsewhere pertinent to the subject-matter, have been most discriminatingly collected and analyzed in the very able brief of the learned counsel for the appellant, which we direct to be printed in full.

*Reversed and remanded.*